The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ANEICIA FORD, <br><br> Defendant. | NO. CR24-122-JNW-001 <br><br> **UNITED STATES' SENTENCING MEMORANDUM** |

Within weeks of the start of her employment at the Victim Credit Union, Aneicia Ford aggregated customers' personal account information for sale. She knew that this identifying information would be used to commit fraud on the individual victims' accounts and persisted in stealing that information for the co-conspirators' use. Her role in the conspiracy was essential to its success, even though she was not involved in the subsequent account takeovers. For her repeated abuse of her position of trust, the United States respectfully recommends that the Court impose a total sentence of 30 months in custody, to be followed by 3 years of supervised release, and that the Court order restitution in the amount of $345,014.51.

United States' Sentencing Memorandum - 1
*United States v. Aneicia Ford*, CR24-122-JNW-001

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I. BACKGROUND

### A. Offense Conduct

On March 28, 2022, the Victim Credit Union ("VCU") hired Aneicia Ford to answer customers' calls made to its Contact Center. Ford worked out of her home in Tacoma and used VCU-supplied equipment for her position. As part of new hire training from April 28, 2022 to May 4, 2022, Ford was specifically instructed that she was to protect the confidentiality of members' personal information and that the VCU would be monitoring her computer activity. During her employment and until she was terminated on August 31, 2022, Ford accessed VCU bank accounts and unlawfully retained at least 23 individual victims' personally identifiable information ("PII"). She accessed the victims' accounts both as a part of her job responsibilities and at times without any business purpose (for instance, on days she was not scheduled to work). Ford later sold the stolen PII—including dates of birth, Social Security Numbers, and bank account numbers—to an uncharged co-conspirator.

Codefendant Dangelo Roberts and an uncharged co-conspirator disseminated the stolen PII originating from Ford amongst the members of the charged conspiracy, and that information was used: (i) to produce counterfeit identification cards in the victims' names but bearing photos of the co-conspirators, and (ii) to gain access to and conduct unauthorized transactions on the victims' VCU accounts. Once the co-conspirators successfully took over an account, they committed the fraud through actions such as: obtaining new debit cards in the victims' names; increasing ATM withdrawal limits and point-of-sale purchase limits; purchasing cashier's checks and money orders; and withdrawing cash.

VCU access logs showed that, with only a few exceptions, Ford was the last employee to have accessed the individual victims' accounts prior to an account takeover or attempted account takeover. The first account takeover using PII stolen by Ford occurred on May 13, 2022—nine days after she completed training at the VCU. *See*

United States' Sentencing Memorandum - 2
*United States v. Aneicia Ford*, CR24-122-JNW-001

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Bates 10154. The overall conspiracy caused actual losses to the VCU of $345,014.51, stemming from 19 individual accounts that the co-conspirators successfully compromised.

### B. Procedural History

On July 17, 2024, the defendant was charged by indictment with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. §§ 1344 & 1349 (Count 1); Bank Fraud in violation of 18 U.S.C. §§ 1344 & 2 (Counts 2-7); and Aggravated Identity Theft in violation of 18 U.S.C. §§ 1028A(a)(1) & 2 (Counts 8-13). Dkt. 1. On May 20, 2025, the defendant pleaded guilty to the conspiracy offense and one count of Aggravated Identity Theft. Dkt. 109. The parties' plea agreement provides that the Government's recommendation cannot exceed a total term of 36 months and that Ford will pay restitution to the VCU in full. *Id.* ¶¶ 12-13.

Ford has remained at liberty on bond without incident since her initial appearance on August 1, 2024. Dkts. 3, 40.

### C. Criminal History

The defendant has no criminal history.

## II. SENTENCING GUIDELINES CALCULATIONS

The United States concurs with the Sentencing Guidelines calculations in the PSR, which are consistent with the calculations the parties stipulated to in the plea agreement. With a criminal history category of I and a total offense level of 18, the resulting advisory Guidelines range is 27 to 33 months, plus the consecutive 2-year mandatory minimum.

## III. THE 3553(a) FACTORS SUPPORT THE RECOMMENDED SENTENCE

An analysis of the relevant sentencing factors in this case supports the United States' recommended, below-Guidelines sentence of a total of 30 months in custody (6 months as to Count One, and 24 months consecutive as to Count Ten).

United States' Sentencing Memorandum - 3
*United States v. Aneicia Ford*, CR24-122-JNW-001

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A.  **Nature and Circumstances of the Offenses**

Ford's utter disregard for the confidentiality of the victims' PII and the position of trust she held vis-à-vis that personal information supports a significant custodial sentence in this case. Ford knowingly joined in the conspiracy shortly after starting a new job—following training instructing her *not* to do precisely what she did—and she contributed to the conspiracy for months. The VCU's electronic logs demonstrate that Ford accessed the victims' accounts on multiple occasions throughout the course of her employment (and not, for instance, all 23 accounts at once). The account takeovers in this case could not have occurred without the PII she stole. Although Ford's role in the conspiracy was relatively simple, she nonetheless independently analyzed the victims' accounts to ensure a specific account would be a fruitful and viable target for the co-conspirators. Only Ford had access to information such as the amount of funds available, or the age or profession of an individual victim.

Ford received an unknown amount for her efforts. It is clear, however, that the payment she received or was promised was enough for her to jeopardize her employment as a single mother to two young children and risk criminal charges. Ford clearly should have known better: In contrast to many of her younger co-conspirators, Ford was in her early 30s when the offense conduct took place. Moreover, the VCU expressly informed her that her electronic access would be monitored, so Ford must have known that she would eventually be caught red-handed. That knowledge shows the brazenness of her conduct as well as the perceived financial straits that propelled her to commit this crime instead of turning to her family for support.

Finally, Ford's actions caused almost $350,000 in actual losses to the VCU, money that is no longer available to the financial institution for daily operations or investments. Her conduct directly compromised the integrity of the VCU's business and caused it to lose business. At least one individual victim closed accounts at the VCU entirely as a result of this fraudulent scheme. *See* Victim Impact Statement. The

United States' Sentencing Memorandum - 4
*United States v. Aneicia Ford*, CR24-122-JNW-001

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

individual victims also wasted time salvaging their VCU accounts and suffer the lasting anxiety of knowing that their personal information has been leaked to an unknown number of co-conspirators.

B.   **Ford's History and Characteristics**

There are mitigating and aggravating aspects of the defendant's history and characteristics. As a child, Ford was abandoned by an abusive father who suffered from alcoholism and witnessed his physical violence against her mother. She later suffered years of verbal and physical abuse by her ex-husband, who also left her solely responsible for financially providing for and raising their children, one of whom has recurring health issues. Ford continues to shoulder these responsibilities while being forced to foster visitation between her ex-husband and her children.

Ford nonetheless described a positive upbringing by her mother, during which all of her needs were met and she was surrounded by positive female family influences, including her maternal grandmother and aunts. She completed high school and some higher education, including community college courses and a medical certificate program. According to Ford, she participated in these crimes due to her financial circumstances; however, there is no indication that Ford's family could not have helped to support her during the time of the offenses. *See* PSR ¶¶ 22, 59-62. It is additionally aggravating that Ford resorted to crime despite her skills and abilities to maintain meaningful employment, including following the charges in this case. *Id.* ¶¶ 85-87.

The Government's 30-month recommendation fully accounts for the defendant's mixed history and characteristics, including the fact that this case is her first criminal conviction.

C.   **Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence**

The proposed sentence also advances the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). Ford's repeated theft of victim PII while in a position of trust at the

United States' Sentencing Memorandum - 5
*United States v. Aneicia Ford*, CR24-122-JNW-001

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

VCU, and with full knowledge that it would be used to commit fraud on the victims' accounts, merits a sentence that is above the two-year mandatory minimum. The proposed sentence would impress upon Ford and the public the seriousness of these offenses, promote respect for the law, and deter similar criminal conduct, especially because the crimes Ford committed are easily replicated and have low barriers to entry. Many people have ready access to others' PII through their employment. Significant consequences are warranted to dispel the notion that misappropriating personal information—let alone profiting from its sale—is a minor offense or one that will not be prosecuted. Moreover, an extended period of supervision will help Ford continue on her positive path and allow her to access any treatment or counseling services she may need.

**D.    Need to Avoid Unwarranted Sentence Disparities**

The JSIN data for similarly situated defendants (with a total offense level of 18 and a criminal history category of I) shows an average length of imprisonment of 41 months and a median length of imprisonment of 42 months, excluding the mandatory minimum applicable to this case. The total recommended sentence is approximately one year less than these figures, and reflects the mitigating factors in this case, including the Probation Office's assessment that the crimes committed are "in many ways . . . aberrant act[s] in an otherwise upstanding life." Probation's Sentencing Recommendation at 6.

Additionally, Ford, Dangelo Roberts, and Anthony McQueen are the only defendants who pleaded guilty to one count of Aggravated Identity Theft, which carries a mandatory minimum, and their cases are therefore distinguishable from that of their co-defendants. *See* Dkts. 109, 118, 170. McQueen's case is further distinguishable from Ford's case because the Government estimates McQueen to be in criminal history category VI. As to Roberts, the Government considers him to be the most culpable defendant charged in this conspiracy due to his recruitment efforts as well as his sustained use and distribution of the stolen PII. The Court sentenced Roberts to a total of 36 months in custody. Dkt. 194. In contrast to Roberts, however, there is no evidence

United States' Sentencing Memorandum - 6
*United States v. Aneicia Ford*, CR24-122-JNW-001

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that Ford helped the co-conspirators use the PII she stole in any way.  This significant distinction ultimately justifies a sentence of less than 36 months in Ford's case.

### IV.   CONCLUSION

For the foregoing reasons, the United States respectfully recommends that the Court sentence Ford to a total of 30 months in custody and a 3-year term of supervised release, and order restitution in the amount of $345,014.51.

DATED this 28th day of November, 2025.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

 s/ Jessica M. Ly
JESSICA M. LY
Special Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-4311
Fax: 206-553-0882
Email: Jessica.Ly@usdoj.gov

United States' Sentencing Memorandum - 7
*United States v. Aneicia Ford*, CR24-122-JNW-001

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970